# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

NCMIC Insurance Company,

Plaintiff,

Civ. No. 05-456 (RHK/JSM)

v.
**MEMORANDUM OPINION AND ORDER**

Scott Sammon, D.C. and Acu-Chiropractic
Wellness Center, P.A.,

Defendants.

David H. Levitt and Duana J. Grage of Hinshaw & Culbertson, Minneapolis, Minnesota, for Plaintiff.

Douglas Earl Schmidt of Schmidt Law Firm, and Jack L. Neveaux of Neveaux & Associates, Wayzata, Minnesota, for Defendant.

## INTRODUCTION

Plaintiff NCMIC Insurance Company ("NCMIC") commenced this declaratory judgment action to clarify its obligation to defend and indemnify Defendants Scott Sammon ("Sammon") and Acu-Chiropractic Wellness Center ("Acu-Chiropractic") in an underlying state court action for personal injury, medical malpractice, and negligence. Before the Court are two motions: Sammon's Motion to Dismiss under Fed. R. Civ. P. 12(b)(1) and NCMIC's Motion for Summary Judgment under Fed. R. Civ. P. 56(c). Sammon's Motion to Dismiss is based on NCMIC's alleged failure to satisfy the amount in controversy requirement for diversity jurisdiction under 28 U.S.C. § 1332. NCMIC's Motion for Summary Judgment seeks a judicial determination that it is not obligated to defend or

indemnify Sammon because the conduct alleged in the underlying state court action falls

outside the scope of policy coverage.  For the reasons set forth below, the Court will deny

both motions.

**BACKGROUND**

Sammon is a chiropractor licensed in the State of Minnesota and is the owner of

Acu-Chiropractic, a clinic that provides chiropractic services to the public.  (Hurst Compl.

¶¶ 2-4; Grage Aff. Ex. 1 ¶¶ 6-10.)  NCMIC provided insurance coverage for Sammon, in his

professional capacity, from 1997 through 2004.  (Grage Aff. Exs. 1, 2.)  On February 7,

2005, Allison Hurst ("Hurst") filed a Complaint in state court ("Hurst Complaint") against

Sammon and Acu-Chiropractic alleging four claims: (1) sexual abuse causing personal

injury, (2) medical malpractice, (3) assault and battery, and (4)  negligence.  (Hurst Compl.

¶¶ 7-23.)  The claims arise from conduct by Sammon while he was administering

chiropractic care to Hurst from 1998 through 2004.  (Hurst Compl. ¶ 5.)  Hurst alleges that

Sammon "repeatedly ma[de] inappropriate sexual comments regarding [Hurst], her

appearance and dress; request[ed] and/or coerc[ed] [Hurst] into undressing in front of him;

coerc[ed] [Hurst] into allowing him to inappropriately massage her breasts and nipples less

than a week after breast surgery."  (Hurst Compl. ¶ 5.)  Hurst asks for damages "in excess

of $50,000" for each claim.  ( Hurst Compl. ¶¶ 7-23.)

During the relevant time period, Sammon was insured by a series of policies issued

by NCMIC.  (Compl. ¶ 4.)  The scope of coverage provided by the policies changed during

the six-year period when Hurst was receiving treatment.  (Summ. J. Mem. in Supp. at 3-4.)

The first version of the policy ("Old Policy"), in effect from 1997 through 1999, provided:

> Within the limits of liability shown on the Declaration, we will pay all sums
> to which this insurance applies and which you become legally obligated to
> pay as damages because of an injury.  The injury must be caused by an
> accident arising out of providing or failure to provide *professional services*
> to a patient during the policy period....
>
> *Professional Services* means only those services usually and customarily
> furnished by chiropractors.  It does not include any services furnished by an
> insured as a practitioner of any other healing or treating art.

(Summ. J. Mem. in Supp. at 3-4.)  The second version of the policy ("New Policy"),

effective beginning in 2000, provided:

> We will pay on your behalf all sums to which this insurance applies and which
> you become legally obligated to pay as damages because of an injury.  The
> injury must be caused by an accident arising from a medical incident during
> the policy period....
>
> Medical incident means any negligent omission, act or error in the providing
> of *professional services*.
>
> *Professional Services* means those services which are within the scope of
> practice of a chiropractor in the state in which the chiropractor is licensed.

(Summ. J. Mem. in Supp. at 3-4.)  On March 1, 2005, NCMIC commenced this declaratory

judgment action to clarify its obligation to defend and indemnify Sammon and Acu-

Chiropractic.  (Compl. ¶¶ 24-36.)

## STANDARDS OF REVIEW

**I.     Motion to Dismiss**

3

Federal courts are courts of limited jurisdiction, possessing only those powers authorized by the Constitution and the statutes enacted by Congress. <u>Willy v. Coastal Corp.</u>, 503 U.S. 131, 136 (1992). Congress has given this Court jurisdiction "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between citizens of different states." 28 U.S.C. § 1332. Under Fed. R. Civ. P. 12(b)(1), a party may move a court to dismiss a federal court action for "lack of jurisdiction over the subject matter."

"The rule governing dismissal for want of jurisdiction in cases brought in federal court is that the sum claimed by the plaintiff controls if the claim is made in good faith." <u>St. Paul Mercury Indem. Co. v. Red Cab Co.</u>, 303 U.S. 283, 288 (1938). However, "when a federal complaint alleges a sufficient amount in controversy to establish diversity jurisdiction, but the opposing party or the court questions whether the amount alleged is legitimate, the party invoking federal jurisdiction must prove the requisite amount by a preponderance of the evidence." <u>Missouri v. Western Sur. Co.</u>, 51 F.3d 170, 173 (8th Cir. 1995). It must appear to a legal certainty that the claim is for less than the jurisdictional amount to justify dismissal. <u>St. Paul Mercury Indem. Co.</u>, 303 U.S. at 288. Based upon proof offered by the party invoking jurisdiction, if the court is satisfied to a legal certainty that plaintiff was never entitled to recover over $75,000, the lawsuit should be dismissed. <u>Western Sur. Co.</u>, 51 F.3d at 173.

## II.      Motion for Summary Judgment

Summary judgment is appropriate where there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). For purposes of summary judgment, a disputed fact is "material" if its resolution will determine the outcome of the case, and a dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. See Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp, 475 U.S. 574, 586-87 (1986). The moving party carries the burden of showing that there is no genuine issue of material fact, and all evidence and reasonable inferences must be viewed in a light most favorable to the non-moving party. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

## ANALYSIS

Before the Court are two motions: Sammon's Motion to Dismiss under Fed. R. Civ. P. 12(b)(1) and NCMIC's Motion for Summary Judgment under Fed. R. Civ. P. 56(c). The Court will address each in turn.

**I.      Sammon's Motion to Dismiss**

In his Motion to Dismiss, Sammon argues there is no evidence that Hurst has sustained damages, or that NCMIC will be exposed to a contractual obligation under the relevant policy, in an amount in excess of $75,000. (Dismiss Mem. in Supp. at 2.) Sammon points to Hurst's Complaint, in which she alleges damages "in excess of $50,000" for each of her four claims (Hurst Compl. ¶¶ 7-23), and contends that NCMIC has not shown to a legal certainty that the amount in controversy for federal diversity jurisdiction

5

exceeds $75,000.  (Dismiss Mem. in Supp. at 2.)  In response, NCMIC relies on Hatridge v.

Aetna Casualty & Surety Co., 415 F.2d 809 (8th Cir. 1992), for the proposition that the

amount in controversy requirement in a declaratory judgment case involving insurance

indemnification can be satisfied by the maximum liability under an insurance policy.

(Dismiss Mem. in Opp'n at 1.)

        In Hatridge, an insurance company brought a declaratory judgment action against an

insured and an individual with a judgment against the insured.  415 F.2d 809, 811 (8th Cir.

1969).  The district court denied a motion to remand to state court, and the Eighth Circuit

affirmed.  Hatridge, 415 F.2d at 816.  One issue addressed by the Eighth Circuit in Hatridge

was whether the amount in controversy was satisfied for the purposes of federal diversity

jurisdiction.  Hatridge, 415 F.2d at 814.  The Eighth Circuit recognized the possible

pecuniary risk to the defendant insurance company was the total monetary limit of the

insurance policy covering the insured, and acknowledged the possibility of determining the

amount in controversy by "the pecuniary result to either party which the judgment would

directly produce."  Hatridge, 415 F.2d at 815 (citation omitted).  However, the Eighth

Circuit did not ultimately rest on this reasoning in affirming the district court.[1]  North

Dakota v. Merchants Bank & Trust Co., 634 F.2d 368, 372 n.7 (8th Cir. 1980).

---

        [1] The Eighth Circuit's holding in Hatridge was based on Arkansas law and principles of pendent
jurisdiction.  North Dakota v. Merchants Bank & Trust Co., 634 F.2d 368, 372 n.7 (8th Cir. 1980).
Therefore, NCMIC's conclusory contention that Hatridge is dispositive on the present case is not
entirely correct because the Eighth Circuit's discussion of pecuniary risk to the insurance company in
Hatridge is dicta.

While it does not appear that the Eighth Circuit expressly adopted the pecuniary risk principle discussed in Hatridge, the Seventh Circuit directly implemented the concept in Grinnell Mut. Reinsurance Co. v. Shierk, 121 F.3d 1114 (7th Cir. 1997). In Grinnell, the Seventh Circuit found that the amount in controversy in a declaratory judgment case brought by an insurance company was satisfied because the insurance company was potentially liable for damages of up to $100,000, the monetary limit on the policy. 121 F.3d at 1116. The Seventh Circuit recognized that the total costs of indemnifying and defending the insured would probably surpass the damages claimed by the plaintiff. Grinnell, 121 F.3d at 1117 n.2 (citing Motorists Mutual Ins. Co. v. Simpson, 404 F.2d 511, 515 (7th Cir. 1968), cert. denied 394 U.S. 988 (1969)). Several other courts have also determined that the total pecuniary risk is dispositive on the amount in controversy requirement. See, e.g., Cotton States Mut. Ins. Co. v. Peacock, 949 F. Supp. 823 (M.D. Ala. 1996) (determining that the amount in controversy was satisfied by the $100,000 insurance policy limit unless the defendant claimants filed an answer stating unequivocally that they would not seek damages in excess of $50,000); Monticello Ins. Co. v. Patriot Sec. Inc., 926 F. Supp. 97, 99 (E.D. Tex. 1996) (determining that the amount in controversy was satisfied "considering the possible indemnification, the defense fees and costs, and a possible exemplary damage award").

The principle acknowledged by the Eighth Circuit in Hatridge and bolstered by the Seventh Circuit in Grinnell counsels in favor of NCMIC. Accordingly, because the pecuniary risk for NCMIC is $1,000,000, the total limit for the insurance policy covering

7

Sammon (Compl. Ex. B.), the Court determines that the amount in controversy requirement for federal diversity jurisdiction is satisfied.

In addition, the Court notes that Hurst's complaint seeks "in excess of $50,000" for *each claim*. (Hurst Compl. ¶¶ 7-23.) If Hurst goes to trial on all four of her claims and prevails, the jury could award well in excess of $75,000. Even if Hurst only goes to trial on one claim, the statement of damages "in excess of $50,000" does not guarantee an award less than $75,000. Hurst acknowledged this possibility in her Answer by agreeing with NCMIC's Complaint that the amount in controversy in this case exceeds $75,000.[2] (Compl. ¶ 13; Hurst Answer ¶ 5.)

This Court is not satisfied to a legal certainty that Hurst will be unable to recover damages in excess of $75,000. Therefore, Sammon's Motion to Dismiss under Fed. R.

---

[2] Sammon also contends that a claim "in excess of $50,000" is insufficient for the purposes of 28 U.S.C. § 1332 under the rationale of Al-Cast Mold & Pattern Inc. v. Perception Inc., 52 F. Supp. 2d 1081 (D. Minn. 1999). (Dismiss Mem. in Supp. at 3.) Sammon's reliance on Al-Cast Mold & Pattern is misplaced. In that case, the district court found a compulsory counterclaim could not satisfy the amount in controversy necessary for diversity jurisdiction. Al-Cast Mold & Pattern, 52 F. Supp. 2d at 1084. The district court noted that the defendant's counterclaim sought damages "in excess of $50,000" and found the specific statement did not meet the requirements set by Congress. Al-Cast Mold & Pattern, 52 F. Supp. 2d at 1084. In this case, NCMIC has commenced a declaratory judgment action based on insurance policy coverage of $1,000,000, and has not made a specific statement regarding damages like the defendant in Al-Cast Mold & Pattern. Also, unlike the single claim for damages "in excess of $50,000" in Al-Cast Mold& Pattern, in this case Hurst claims damages "in excess of $50,000" for *each of her four claims.* (Hurst Compl. ¶¶ 7-23.)

Civ. P. 12(b)(1) for failure to meet the requisite amount in controversy pursuant to 28

U.S.C. § 1332 will be denied.

## II.    NCMIC's Motion for Summary Judgment

NCMIC seeks a judicial determination that it is not obligated to defend or indemnify

Sammon because the conduct alleged in the underlying state court action falls outside the

scope of policy coverage.  Under Minnesota law[3], an insurer assumes two duties to its

insured: the duty to defend and the duty to indemnify.  Reinsurance Assoc. of Minn. v.

Timmer, 641 N.W.2d 302, 307 (Minn. Ct. App. 2002).  The Court will address each duty in

turn.

### 1.    Duty to Defend

The duty to defend is broader than the duty to indemnify.  Meadowbrook, Inc. v.

Tower Ins. Co., 559 N.W.2d 411, 415 (Minn. 1997).  Minnesota has established a difficult

evidentiary burden which an insurance carrier must satisfy in order to avoid providing a

defense to claims under its insurance policy:  a duty to defend arises when any part of a

claim against the insured is arguably within the policy's scope.  Reinsurance Assoc. of

Minn., 641 N.W.2d at 307.  "If a complaint alleges several claims, and any one of them

would require the insurer to indemnify, the insurer must provide a defense against all

claims."  Reinsurance Assoc., 641 N.W.2d at 307.  Thus, "an insurer who wishes to escape

---

[3] In insurance coverage actions involving diversity of citizenship, state law controls the analysis of the insurance policy.  Home Ins. Co. v. Aetna Ins. Co., 236 F.3d 927, 929 (8th Cir. 2001).  Minnesota law applies here.

that duty has the burden of showing that all parts of the cause of action fall clearly outside the scope of coverage." Jostens, Inc. v. Mission Ins. Co., 387 N.W.2d 161, 165-66 (Minn. 1986). Further, "in determining whether there is a duty to defend, a court must give the benefit of the doubt to the insured" and, "[a]s a result, unless the insurer proves the pleadings and facts clearly establish that the claim falls outside the policy terms, the duty to defend arises." John Deere Ins. Co. v. Shamrock Indus., Inc., 929 F.2d 413, 418 (8th Cir. 1991) (applying Minnesota law).

In considering whether a duty to defend arises, a court considers the applicability of the duty as of the time the insured tendered the defense to the insurer. Jostens, 387 N.W.2d at 166. The duty to defend is generally determined by comparing the allegations in the complaint with the language of the insurance policy. Tschimperle v. Aetna Cas. & Sur. Co., 529 N.W.2d 421, 424 (Minn. Ct. App. 1995). When interpreting an insurance contract, words are given their natural and ordinary meaning, and any ambiguity regarding coverage is construed in favor of the insured. American Family Ins. v. Walser, 628 N.W.2d 605, 609 (Minn. 2001). However, courts may look beyond the complaint to extrinsic facts to establish the existence or nonexistence of that duty. Tschimperle, 529 N.W.2d at 424. "Where the insurer has no knowledge to the contrary, it may make an initial determination of whether or not it is obligated to defend from the facts alleged in the complaint against its insured." Garvis v. Employers Mut. Cas. Co., 497 N.W.2d 254, 258 (Minn. 1993) (citations omitted).

NCMIC is entitled to summary judgment on the issue of its duty to defend only if it can clearly show that all four claims alleged by Hurst against Sammon fall outside of the policy coverage.  The Hurst Complaint alleges:

> Plaintiff [Allison Hurst] first presented to Defendants [Dr. Sammon and Acu-Chiropractic Wellness Center] for chiropractic care in 1998 and continued care until May 2004. During the course of her treatment, Dr. Sammon examined and treated [Hurst] in a negligent and unlawful manner, including but not limited to: repeatedly making inappropriate sexual comments regarding [Hurst], her appearance and dress; requesting and/or coercing [Hurst] into undressing in front of him; coercing [Hurst] into allowing him to inappropriately massage her breasts and nipples less than a week after breast surgery.... At all times, Dr. Sammon's inappropriate sexual conduct occurred under the guise of rendering professional chiropractic care and treatment.

(Hurst Compl. ¶¶ 5-6.)  Based on these facts, Hurst alleges four causes of action.  First, Hurst makes a claim for "Sexual Abuse causing Personal Injury."  (Hurst Compl. ¶¶ 7-8.) Second, her claim for medical malpractice alleges that Sammon "negligently deviated from the applicable standard of chiropractic care."  (Hurst Compl. ¶¶ 9-13.)  Third, Hurst claims that "Sammon's unwanted and offensive sexual touching constituted an assault and battery." (Hurst Compl. ¶¶ 14-15.)  Finally, she makes a claim for negligence based on Sammon's "failure to exercise due care" towards her and "failure to institute appropriate procedures and policies" for protection of patients.  (Hurst Compl. ¶¶ 21-23.)

NCMIC makes three arguments in support of its decision not to defend Sammon against the Hurst Complaint: (1) Sammon's conduct does not fall within the policy's

definition of "professional services," (2) the policy's intentional infliction of injury

exclusion applies, and (3) the policy's sexual impropriety exclusion applies.  (Summ. J.

Mem. in Supp. at 6-11.)

### a.    Professional Services

In both versions of the insurance policy, NCMIC's liability only arises when the

insured is providing "professional services."  (Summ. J. Mem. in Supp. at 3-4.)  The Old

Policy of the policy defines professional services as "those services usually and

customarily furnished by chiropractors."  (Summ. J. Mem. in Supp. at 3-4.)  The New

Policy of the policy defines professional services as "those services which are within the

scope of practice of a chiropractor in the state in which the chiropractor is licensed."

(Summ. J. Mem. in Supp. at 3-4.)

The specific wording of Hurst's allegations points directly to "professional

services" offered by Sammon.  She sought "chiropractic care" from Sammon during a six-

year time period (1998-2004).  (Hurst Compl. ¶ 5.)  The allegedly unlawful conduct by

Sammon occurred during "the course of her treatment."  (Hurst Compl. ¶ 5.)  Sammon "....

massage[d] her breasts and nipples less than a week after breast surgery."  (Hurst Compl. ¶

5.)  Most notably, Hurst makes a claim against Sammon for "medical malpractice," alleging

he "deviated from the applicable standard of chiropractic care in [his] treatment of [Hurst]."

(Hurst Compl. ¶ 12.)

NCMIC also conducted discovery in this case, which expanded its knowledge of the facts.[4]  In response to NCMIC's interrogatories, Hurst disclosed that she had a conversation with Sammon regarding the potential for scar tissue development after breast implant surgery.  (Grage Aff. Ex. 4 at 2.)  In response to another set of NCMIC's interrogatories, Sammon listed the numerous medical complaints given by Hurst when she sought chiropractic care, including "breast cancer" and "scar tissue adhesions."  (Grage Aff. Ex. 5 at 1.)  Sammon further admitted that he touched Hurst's breasts, but only for the purpose of therapy and reduction of scar tissue.  (Grage Aff. Ex. 5 at 4; Brost Aff. at 2.)  Sammon also submitted the affidavit of Dr. Barbro Brost, a chiropractor practicing in Minnesota.  (Brost Aff. at 1.)  Dr. Brost opines that the treatment given by Sammon - called breast myotherapy - is within the scope of chiropractic care.  (Brost Aff. at 2-3.)  Based on these submissions and the Hurst Complaint, NCMIC is aware of facts that arguably place Sammon's conduct within the scope of "professional services."

NCMIC focuses on Hurst's characterization of the alleged conduct as "inappropriate sexual conduct" under "the guise of treatment."  (Hurst Compl. ¶ 6.)  However, the determination of whether a duty to defend exists is not defined solely by the way in which

---

[4] NCMIC correctly observes that its decision to defend can be based solely on the underlying Complaint, and it is not obligated to investigate any further to determine facts which might trigger the duty to defend.  Garvis, 497 N.W.2d at 259.  In this case, however, NCMIC conducted and submitted discovery with this Motion for Summary Judgment.  (See Grage Aff. Ex. 1-6.)  In response, Sammon also submitted discovery and an expert affidavit discussing the scope of chiropractic care in Minnesota.  (See Neveaux Aff. Exs12. 1-3.)  This Court can look at extrinsic facts known to the insurer under Tschimperle v. Aetna Cas. & Sur. Co., 529 N.W.2d 421, 424 (Minn. Ct. App. 1995).

the claim is characterized in the underlying lawsuit.  <u>Prahm v. Rupp. Const. Co.</u>, 277

N.W.2d 389, 390 (Minn. 1979) (citations omitted).  NCMIC argues that under Minnesota

law, inappropriate sexual conduct by non-mental health medical professionals is never

considered professional services for the purposes of insurance contract interpretation.

(Summ. J. Mem. in Supp. at 6.)  But, the cases cited by NCMIC in support of this

proposition are distinguishable.

     In <u>Odegard v. Finne</u>, after the successful conclusion of a patient's treatment for a

physical condition, the doctor and the patient engaged in an sexual relationship.  500

N.W.2d 140, 141 (Minn. Ct. App. 1993).   The Minnesota Court of Appeals affirmed the

trial court's grant of summary judgment for medical malpractice on grounds that the

intimate relationship was a consensual decision made subsequent to conclusion of the

treatment and therefore not part of the treatment.  <u>Id.</u> at 143.  The present case is

distinguishable because the conduct alleged by Hurst occurred during the course of her

treatment by Sammon, and she denies consent to the sexual contact.

     In <u>Smith v. St. Paul Fire & Marine Ins. Co.</u>, a physician was accused of sexually

assaulting three minor males who sought treatment for a variety of physical conditions.

353 N.W.2d 130, 131 (Minn. 1984).  At the conclusion of a court trial, the court

determined the doctor's conduct was "solely for the satisfaction of his prurient interest"

and not part of treatment.  <u>Id.</u> at 132.  Based on this finding, the Minnesota Supreme Court

held that the acts of sexual contact did not involve providing professional services and the

insurance company was therefore not required to indemnify under the doctor's policy.  Id.

The present case is before the Court on a Motion for Summary Judgment.  Unlike Smith,

this Court must only consider whether genuine issues of material fact exist concerning

whether Sammon's conduct is within the definition of "professional services."

Accordingly, because the conduct alleged by Hurst arguably falls under the insurance

policy's definition of "professional services," NCMIC has a duty to defend Sammon in the

underlying state court action.

### b.    Intentional Infliction of Injury

NCMIC claims that the conduct alleged by Hurst is specifically excluded by the

"intentional infliction of injury" exclusion in the policy covering Sammon.  (Summ. J.

Mem. in Supp. at 9.)  Both the Old Version and New Version exclude coverage for "the

intentional infliction of injury."  (Summ. J. Mem. in Supp. at 4.)

Minnesota courts have declared that "the purpose of an intentional act exclusion is

to exclude insurance coverage for wanton and malicious acts by an insured, and therefore

[the court] may, absent a finding of specific intent to injure, infer intent to injure as a

matter of law."  American Family Ins. v. Walser, 628 N.W.2d 605, 613 (Minn. 2001)

(citations omitted).  In order to infer intent, a court must determine that the insured acted

with "specific intent to cause" harm and the insured "intended the harm itself, not merely

that the insured generally intended the act."  Walser, 628 N.W.2d at 611 (citations

omitted).  When applying this principle, the court inquires into the intentions of the

insured, but does not inquire whether insured's conduct was wrongful.  Walser, 628 N.W.2d

at 611.  Statements made by the insured outside the pleadings may be considered in

determining whether to infer intent.  Garvis, 497 N.W.2d at 258 (citations omitted).

In this case, in order to infer as a matter of law that Sammon intended to injure

Hurst, the Court must conclude that Sammon acted with deliberate and calculated

indifference to a risk of injury to Hurst.  See Walser, 628 N.W.2d at 614.  Based on

information in the Hurst Complaint and Sammon's discovery responses, the Court cannot

conclude that Sammon acted with such deliberate and calculated indifference.  The Hurst

Complaint alleges that Hurst sought chiropractic treatment from Sammon during a six-year

period, and the allegedly unlawful conduct occurred during the course of such treatment.

(Hurst Complaint ¶¶ 5-6.)  Sammon admits that he touched Hurst's breasts, but for the

purpose of therapy and reduction of scar tissue.  (Grage Aff. Ex. 5 at 4; Brost Aff. at 2.)  It

appears that Sammon intended to provide chiropractic care for Hurst, and there is no

evidence showing that he intended to cause the alleged harm.  Therefore intent to injure

cannot be inferred as a matter of law, and the intentional infliction of injury exclusion does

not apply in this case.

### c.        Sexual Impropriety

NCMIC claims the conduct alleged by Hurst is specifically excluded by the "sexual

impropriety" provision in the insurance policy covering Sammon.  (Summ. J. Mem. in Supp.

at 9.)  Both the New Policy and the Old Policy of the policy exclude coverage for "sexual

impropriety, sexual intimacy or sexual assault."  (Summ. J. Mem. in Supp. at 4.)

Under Minnesota law, the burden is on the insurer to establish the applicability of an

exclusion in an insurance policy.  SCSC Corp. v. Allied Mut. Ins. Co., 536 N.W.2d 305,

311-14 (Minn. 1995).  Exclusions are strictly interpreted against the insurer.  Hennings v.

State Farm Fire & Cas. Co., 538 N.W.2d 680, 683 (Minn. Ct. App. 1989).  To meet this

strict burden, NCMIC simply offers the argument that "the only operative facts alleged in

the underlying Hurst Complaint are of inappropriate sexual conduct" and "this type of

conduct unambiguously falls within the terms of [the sexual impropriety] exclusion."

(Summ. J. Mem. in Supp. at 9.)  NCMIC attempts to establish a connection to the sexual

impropriety exclusion by focusing on Hurst's characterization of Sammon's alleged

conduct as "inappropriate sexual conduct."  (Hurst Compl. ¶ 6.)  However, the

determination of whether a duty to defend exists is not defined solely by the way in which

the claim is characterized in the underlying lawsuit.  Prahm v. Rupp. Const. Co., 277

N.W.2d 389, 390 (Minn. 1979) (citations omitted).  Hurst's Complaint alleges that she

sought chiropractic treatment from Sammon during a six-year period, and the allegedly

unlawful conduct occurred during the course of such treatment.  (Hurst Complaint ¶¶ 5-6.)

Sammon admits that he touched Hurst's breasts, but for the purpose of therapy and

reduction of scar tissue.  (Grage Aff. Ex. 5 at 4; Brost Aff. at 2.)  Genuine issues of

material fact exist concerning whether Sammon's conduct was legitimate chiropractic

treatment or inappropriate sexual conduct.  Therefore, the sexual impropriety exclusion does not apply in this case.

**2.      Duty to Indemnify**

In its Motion for Summary Judgment, NCMIC also asks this Court to determine whether it has an obligation to indemnify Sammon and Acu-Chiropractic Wellness Center in the underlying state court action.  Due to existing genuine issues of material fact in this case, the Court denies NCMIC's motion with respect to indemnification until the underlying action is further developed or completed.  See John Deere Ins. Co. v. Shamrock Industries Inc., 929 F.2d 413 (8th Cir. 1991) (affirming district court's decision requiring an insurance company to defend insured but denying summary judgment on indemnification due to outstanding genuine issues of material fact).

**CONCLUSION**

Based on the foregoing, and all of the files, records and proceedings herein, it is

**ORDERED** that Defendant's Motion to Dismiss (Doc. No. 20) is **DENIED** and Plaintiff's Motion for Summary Judgment (Doc. No. 11) is **DENIED**.

Dated: October 17, 2005                              s/Richard H. Kyle

                                                                    RICHARD H. KYLE

                                                                    United States District Judge

18